UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARY SAVAGE             :
                        :
        Plaintiff,      :
                        :
    v.                  :       Case No. 1:06CV00081 (RCL)
                        :
BIOPORT, INC.           :
                        :
        Defendant.      :

**BIOPORT'S BRIEF IN SUPPORT OF ITS MOTION
TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER**

Defendant BioPort Corporation ("BioPort")[1] respectfully submits this brief in support of its motion to dismiss this lawsuit for lack of personal jurisdiction and improper venue, or in the alternative, to transfer this lawsuit to the United States District Court for the Western District of Michigan. This Court previously dismissed a lawsuit asserting almost identical claims against BioPort for lack of personal jurisdiction. The same result is appropriate here.

**I.     FACTUAL BACKGROUND**

Plaintiff Gary Savage claims that he suffered personal injury as the result of an alleged adverse reaction to Anthrax Vaccine Absorbed ("AVA"), which is manufactured by BioPort in Michigan. At the time of his inoculation, Mr. Savage was a sergeant in the United States Army stationed at Fort Benning, Georgia. [Complt. ¶65]. Mr. Savage was inoculated in Georgia and claims that he was in Georgia when he began filling ill as a result of the inoculation. [Complt. ¶ 66, 67]. Thus, there is no connection between Mr. Savage's claim and this forum other than the fact that he happens to reside in the District of Columbia. [Complt. ¶ 1].

---

[1] BioPort Corporation is improperly named in the complaint as BioPort Inc.

## II.   BIOPORT'S LACK OF CONTACTS WITH THE DISTRICT OF COLUMBIA

1. BioPort is a corporation organized under the laws of the State of Michigan in 1998. Its principal place of business is Lansing, Michigan. [Wibert Dec. ¶ 3.][2]

2. BioPort is not registered to do business in the District of Columbia. [Wibert Dec. ¶ 4]. It has never maintained an office, employee, telephone, mailing address, or a registered agent for the service of process in Washington. [*Id.*] BioPort does not maintain any business records in Washington. [*Id.*] BioPort does not own or lease real property in Washington. [*Id.*]

3. BioPort produces AVA in Lansing, Michigan. [Wibert Dec. ¶ 6.]

4. All of BioPort's records relating to production and testing of AVA are located in Lansing, Michigan. [Wibert Dec. ¶ 6.] The relevant witnesses concerning the production and testing of AVA are located in Michigan. [*Id.*]

5. Since March 2000, BioPort's sole business (with the exception of certain research and development activities) has been the manufacture and sale of AVA. [Wibert Dec. ¶ 5.]

6. All but a small fraction of AVA has been sold only to the United States government pursuant to contracts with the United States Department of Defense ("DoD") and the United States Department of Health & Human Services. [Wibert Dec. ¶ 7.]

7. DoD mandates when and where the AVA it has purchased will be delivered, and BioPort plays no part in that decision-making process. [Wibert Dec. ¶ 8.] At the direction of DoD, BioPort has made shipments of AVA to DoD facilities in the District of Columbia. [Wibert Dec. ¶ 8]. The shipments amount to a fraction of one percent of BioPort's total shipments of AVA to DoD facilities. [*Id*].

---

[2] Citations in the form "[Wibert Dec. ¶ __] are to the accompanying declaration of Timothy Wibert attached as Exhibit 1.

8.  The AVA purchased by HHS is for the Strategic National Stockpile. [Wibert Dec. ¶ 9]. HHS takes delivery of its AVA in Michigan. HHS prefers to keep the location of its Strategic National Stockpile undisclosed. [*Id.*]

9.  BioPort has not marketed or sold AVA directly to individual members of the public, and BioPort has made no direct sales of AVA to District of Columbia residents. [Wibert Dec. ¶ 10.]

10. Recently, BioPort has taken steps to begin marketing AVA to state and local governments. [Wibert Dec. ¶ 11]. These efforts included one meeting in the District of Columbia with the District's Police, Fire and Emergency Medical Services Chiefs. [*Id.*] BioPort has not made any sales to the District of Columbia government or any other state/local government. [*Id.*]

11. BioPort employees occasionally travel to the District of Columbia for federal government relations purposes, such as providing information about AVA to members of Congress, Congressional staff, and executive agencies. [Wibert Dec. ¶ 12]. BioPort officials have also provided testimony before Congress concerning AVA. [*Id.*]. In addition, in 2004, BioPort ran issue-oriented "advertisements" in *Roll Call, The Hill,* and *The Washington Times* concerning AVA, the Strategic National Stockpile, future generation anthrax vaccines, and funding under Project BioShield. [*Id.*] Members of Congress and their staffs were the intended audience for these issue-oriented "advertisements." [*Id.*]

12. BioPort has provided funding to the Partnership for Anthrax Vaccine Education, which is based at George Washington University Medical Center's School of Public Health and Public Health Services. [Wibert Dec. ¶ 13]

3

13.     BioPort has, from time to time, engaged legal counsel based in the District of Columbia including the counsel representing BioPort in this lawsuit. [Wibert Dec. ¶ 14]

14.     None of BioPort's contract negotiations with DoD occurred in the District of Columbia. [Wibert Dec. ¶ 15]. In addition, DoD's contracting officer is located in Frederick, Maryland and the Joint Program Office for Biological Defense, the executive agent for the combined armed services programs for biological defense, is located in Falls Church, Virginia. [Id.]

15.     HHS was represented by some District of Columbia based personnel in the negotiation of the HHS contract, but the HHS contracting officer was originally located in Atlanta, Georgia. [Wibert Dec. ¶ 16]. Recently BioPort was informed that the HHS contracting officer has changed and is now based in the District of Columbia. BioPort is also in the process of negotiating a contract modification; HHS is represented by some District of Columbia based personnel in these negotiations. [Id.].

## III. ARGUMENT

### A. This Court Lacks Personal Jurisdiction Over BioPort

Plaintiff concedes that BioPort is a Michigan corporation with its principal place of business in Michigan. [Cmplt. ¶ 2] Thus, BioPort is a nonresident corporation and the Court must determine whether BioPort possesses the requisite "minimum contacts" with the District of Columbia to justify the assertion of personal jurisdiction over it here. *Freiman v. Lazur*, 925 F. Supp. 14, 21 (D.D.C. 1996). The standard for determining personal jurisdiction is as follows:

> To establish jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process.

*GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)).

Plaintiff has the burden to establish a factual predicate for this Court's exercise of personal jurisdiction over BioPort. *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991); *Shapiro, Lifschitz & Shram, P.C. v. R.E. Hazard Jr. Ltd. P'ship*, 90 F. Supp. 2d 15, 20 (D.D.C. 2000).

### 1. There is No Basis for This Court to Assert General Jurisdiction Over BioPort

General jurisdiction refers to jurisdiction that is predicated on contacts of a defendant that are *unrelated* to the plaintiff's causes of action. *Atlantigas Corp. v. Nisource, Inc.*, 290 F.Supp.2d 34, 50 (D.D.C. 2003). Section 13-334 (a) of the District of Columbia Code permits a court to exercise general jurisdiction over a non-resident corporation if the corporation is "doing business" in the District. *Gorman v. Ameritrade Holding Corporation*, 293 F.3d 506, 509-10 (D.C. Cir. 2002). "[T]he reach of 'doing business' jurisdiction under §13-334(a) is 'coextensive with the reach of constitutional due process.'" *Gorman*, 293 F.3d at 510.

In the District of Columbia, there is a strict procedural requirement that must be satisfied before a court can assert general jurisdiction over a non-resident defendant – the complaint must be served on the non-resident defendant in the District of Columbia. *Gorman*, 293 F.3d at 514. (Rule 4's general prescription for service of process cannot replace the specific jurisdictional requirement of D.C.Code § 13-334(a) that service be made in the District of Columbia). *See also, Gonzalez v. Internacional de Elevadores*, 891 A.2d 227, 233 (D.C. 2006). Here, this procedural requirement is not met: the complaint was served on BioPort in Michigan by first class mail, return receipt requested. [Wibert Dec. ¶ 3]. Thus, for this reason alone, there is no basis for this Court to assert general jurisdiction over BioPort.

Even if this procedural deficiency were not alone enough to preclude the assertion of general jurisdiction over BioPort, there still would be no basis for this Court to assert general jurisdiction. A forum may exercise general jurisdiction over a defendant consistently with due process only if the defendant has continuous, systematic and substantial general contacts with the state. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-415 (1984). It is well settled that courts impose a more stringent minimum contacts test for the assertion of general jurisdiction. *Gorman,* 293 F.3d at 510 n.2. Invoking general jurisdiction over a non-resident defendant requires a showing that the defendant operates "continuously and substantially **within** [the] state . . ." *Crane v. Carr,* 814 F2d. 758, 763 (D.C. Cir. 1987) (emphasis added). Indeed, as the Ninth Circuit held, the contacts with the forum need to be to such a degree that it would "approximate physical presence." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006).

Instructively, the Supreme Court has held that a defendant's regular course of dealing with a company in the forum is not a sufficient predicate for a court to assert general jurisdiction over the defendant for claims unrelated to that course of dealing. *Helicopteros Nacionales de Colombia*, 466 U.S. at 418; *See also Rosenberg Bros. & Co., Inc. v. Curtis Brown Co.*, 260 U.S. 516, 518 (1923) (holding that regular purchases by Oklahoma retailer from New York wholesalers was insufficient to find that retailer was present within New York). Based upon this reasoning, BioPort's course of dealing with DoD and HHS could not serve as a predicate for the assertion of general jurisdiction over BioPort. Moreover, BioPort's contacts with these agencies are excluded from the jurisdictional analysis based upon the "government contacts" doctrine discussed below (at page 8).

6

There is no other basis for this Court to assert general jurisdiction over BioPort. BioPort has never maintained an office, employee, telephone, mailing address, or a registered agent for the service of process in the District of Columbia. [Wibert Dec. ¶ 4.] BioPort does not own or lease real property in Washington or maintain any business records in the District of Columbia. [*Id.*] Moreover, BioPort has never marketed or sold AVA for distribution or use by the public in general; it has never made a sale of AVA to a District of Columbia resident; and it has never directed any marketing activities at District of Columbia residents in general. [Wibert Dec. ¶ 7]

    2.    **There is No Basis for this Court to Assert Specific Jurisdiction Over BioPort.**

The assertion of specific jurisdiction requires that the claim arise from the non-resident's contacts with the District of Columbia. That is, the predicate for specific jurisdiction over BioPort must arise from the same conduct of which plaintiff complains. *Jung v. Association of American Medical Colleges,* 300 F.Supp. 2d 119, 128 (D.D.C. 2004).

The complaint contains no reference to the District of Columbia long arm statute. It does, however, allege that "venue is proper" because the "defendant does business within the District of Columbia including the vaccination of various service members with the defendant's product who are stationed and reside within the District of Columbia . . ." [Complt ¶ 4]. Although this allegation is framed in the context of "venue," it would appear that plaintiff is alleging that this Court can assert personal jurisdiction over BioPort for transacting business in the District of Columbia under § 13-423(a)(1) of the D.C. Code. The only other possibly relevant portions of the District of Columbia long-arm statute provide:

> [a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . .
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

7

> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia. . . .

D.C. Code Ann. § 13-423(a) (2000).

### a. *Jurisdiction Over BioPort Cannot Be Predicated on "Transacting Business"*

There is no basis for this Court to assert personal jurisdiction over BioPort based upon the "transacting business" section of the D.C. long-arm statute, section 13-423(a)(1). As a preliminary matter, BioPort's contacts with the federal government in the District of Columbia are excluded from the jurisdictional analysis pursuant to the "government contacts" doctrine. *See Jung*, 300 F.Supp.2d at 139; *Mallinckrodt Med., Inc. v. Sonus Pharms., Inc.*, 989 F. Supp. 265, 271 (D.D.C. 1998); *World Wide Minerals Ltd. v. Republic of Kazakhstahn*, 116 F. Supp. 2d 98, 105 (D.D.C. 2000); *Freiman v. Lazur*, 925 F. Supp. 14, 24 (D.D.C. 1996); *Investment Co. Inst. v. United States*, 550 F. Supp. 1213, 1216 (D.D.C. 1982); *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976); *Weisblatt v. United Aircraft Corp.*, 134 A.2d 713, 715 (D.C. 1957). Thus, BioPort's contacts with District of Columbia based HHS employees in connection with the HHS contract negotiations, its contacts with the federal government to provide information about AVA, and its issue-focused advertisements in *Roll Call, The Hill,* and *The Washington Times* cannot serve as a predicate for asserting personal jurisdiction over BioPort in the District of Columbia for the causes of action asserted in the complaint.

BioPort's remaining contacts with the District of Columbia are not enough to constitute "transacting business" in the District of Columbia. To find that a defendant "transacted

business" in the District of Columbia, a court must conclude that the District of Columbia "business is of a 'substantial character.'" *World Wide Minerals Ltd. v. Republic of Kazakhastahn*, 116 F.Supp. 2d 98, D.D.C. 2000). Here, BioPort's nascent efforts to market AVA to the government of the District of Columbia cannot be characterized as business of a "substantial character."

Equally dispositive is the fact that plaintiff's cause of action does not arise out of BioPort's contacts with the District of Columbia. Plaintiff's injury does not arise out of BioPort's contract negotiations with the federal government or BioPort's government relations activities. Instead, plaintiff alleges that malfeasances in the production of AVA caused his injuries. To the extent there were any malfeasances (which BioPort denies), they occurred in Michigan, not the District of Columbia.

> b. **_BioPort Has Caused No Tortious Injury in the District of Columbia_**

Section 423(a)(3) of the D.C. long-arm statute is "a 'precise and intentionally restricted tort section,' which confers jurisdiction 'only over a defendant who commits an act in the District which causes an injury in the District, without regard to any other contacts.'" *Freiman v. Lazur*, 925 F. Supp. at 22 (quoting *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986)). In order to be subject to personal jurisdiction under the tort section of the long-arm statute, the defendant must commit a tortious act within the District of Columbia that causes injury in the District of Columbia:

> Our Court of Appeals reads Section 423(a)(3) as requiring "more than an 'act' that causes harm in the District; it requires that both the 'act' and the injury occur in the District."

*Id.* at 22-23 (quoting *Reuber v. United States*, 750 F.2d 1039, 1049-50 (D.C. Cir. 1984)). Here, the complaint does not allege any act on BioPort's part in the District of Columbia.

9

Moreover, both § 13-423(a)(3) and § 13-423(a)(4) of the long-arm statute require that the injury to the plaintiff take place *in the District of Columbia* in order for personal jurisdiction to lie. The only difference between section 423(a)(3) and 423(a)(4) is that under subsection 423(a)(3), the act which caused the injury must have occurred in the District of Columbia, while under subsection 423(a)(4), the act which caused the injury must have occurred outside of the District of Columbia. In either case, however, the injury must be incurred inside the District of Columbia. *GTE New Media Servs.*, 199 F.3d at 1349; *Tavoulareas v. Comnas*, 720 F.2d 192, 194 (D.C. Cir. 1983). Here, the plaintiff was inoculated in Georgia, not the District of Columbia and he claims he fell in Georgia, not the District of Columbia. [Complt. ¶¶ 66-67]. Accordingly, the complaint fails to allege facts sufficient to support personal jurisdiction under the tort sections 13-423(a)(3) or 13-423(a)(4) of the D.C. long-arm statute.

### 3. The Exercise of Personal Jurisdiction Over BioPort Would Not Satisfy Due Process

Plaintiff must also show that this Court's assertion of personal jurisdiction over BioPort would not violate due process. *GTE New Media Servs.*, 199 F.3d at 1347. "The Due Process Clause exists, in part, to give 'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 1350 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Here, neither prong of the due process test is satisfied: (1) minimum contacts, and (2) fair play and substantial justice. *World-Wide Volkswagen*, 444 U.S. at 291-92.

Here, the complaint fails to identify BioPort contacts with the District of Columbia sufficient to establish the "minimum contacts" required by the Due Process Clause. The minimum contacts must have a basis in "some act by which the defendant purposefully availed

10

itself of the privileges of conducting activities within the forum State, thus involving the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The "'purposeful availment'" requirement is intended to ensure "that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* (citations omitted). BioPort has not taken any action to invoke the benefits and protections of the laws of the District of Columbia. Indeed, other than dealings with the federal government, BioPort's contacts with the District of Columbia have been *de minimus.. Id.*

The second prong of the due process analysis involves a determination as to whether the "exercise [of] personal jurisdiction . . . would offend 'traditional notions of fair play and substantial justice.'" *See Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In this case, it would not be fair to require BioPort, which has no operations in the District of Columbia or any business here (again, save dealings with the government), to defend against plaintiffs' claims here. Under the circumstances, the assertion of jurisdiction over BioPort would offend traditional notions of fair play and substantial justice.

Notably, in ruling on BioPort's motion in a similar case, Judge Collar-Kotelly specifically found that predicating jurisdiction over BioPort in the District of Columbia based upon its federal government contracts would contravene due process:

> To agree with Plaintiffs, this Court would in essence declare that anytime anyone contracts with any federal government entity, anywhere in the United States, where the governmental decision-maker has an office in the District of Columbia, they would be subject to jurisdiction in the District of Columbia for any harm having any connection to that contract. Such a holding would clearly violate the "traditional notions of fair play and substantial justice" implicit in the constitutional requirement of due process.

*Rugo v. BioPort, Inc.,* (Slip Op. January 7, 2003) Civil Action No. 01-2190 (CKK) (attached as Exhibit 2).

### B.   The District of Columbia is not a Proper Venue

The purpose of the venue statute is to protect a defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial; venue does not give plaintiff the right to select a place that best suits its convenience. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183-184; 99 S. Ct. 2710; 61 L. Ed. 2d 464 (1979). Here, the plaintiff has improperly chosen the District of Columbia[3] as the factual allegations in the Complaint and the facts established by Mr. Wibert's Declaration demonstrate that the District of Columbia is not a proper venue.

The Complaint asserts negligence, breach of warranty and strict product liability claims against BioPort concerning the production of AVA. The events relevant to plaintiff's claims occurred almost entirely in Michigan and more importantly for this analysis, outside of the District of Columbia. BioPort produces AVA in its Michigan facility only. [Wibert Dec. ¶ 6.] BioPort is a citizen of Michigan with its principal place of business being in Lansing, Michigan. [Wibert Dec. ¶ 3.] Thus, any acts taken by BioPort that could be related to plaintiff's causes of action occurred in Michigan.

The first test for proper venue under § 1391(a)(1) is where the defendant resides. BioPort resides within the Western District of Michigan; accordingly, under the first prong of the section, venue is not proper in the District of Columbia. Section 1391(a)(2) provides that venue may also be proper where a substantial part of the events or omissions giving rise to the claim occurred. Here, the relevant events are the activities of BioPort in the production, testing, storage and

---

[3] In diversity cases, venue is governed by 28 U.S.C. § 1391(a), which provides:

> (a) A civil action wherein Jurisdiction is founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

12

distribution of the vaccine. There is no dispute that all of its decisions concerning the production, testing, storage and distribution of the AVA took place in Lansing, Michigan. The Complaint does not allege, directly or indirectly, that a substantial part of the claim arose in the District of Columbia. Thus, under the second test, a substantial part of the relevant events occurred in Lansing, Michigan – not anywhere in the District of Columbia.

The third test for proper venue operates as a catch-all provision, if neither of the first two provisions provide a venue. Under 28 U.S.C. § 1391(a)(3), venue is proper in a judicial district where any defendant is subject to personal jurisdiction, if there is no other district in which the action may otherwise be brought. This test does not apply in this case since BioPort resides in the Western District of Michigan; and the action can be brought in that District.

Accordingly, venue is improper in the District of Columbia, and the Court should dismiss the case under 28 U.S.C. § 1406(a). In the event the Court determines under 28 U.S.C. § 1406 that it is in the interest of Justice to transfer the case, then this case should be transferred to the Western District of Michigan.

### C.  In the Alternative, This Case Should be Transferred to the Western District of Michigan.

Should the Court decline to accept the above arguments concerning personal jurisdiction and venue, this lawsuit should be transferred to the Western District of Michigan pursuant to 28 U.S.C. § 1404(a).[4] Under 28 U.S.C. § 1404(a), this Court has the discretion to transfer a civil action to another district where it might have been brought "for the convenience of the parties and witnesses, in the interest of justice."

---

[4]   As BioPort resides in Michigan, jurisdiction and venue would be proper in the Western District of Michigan. See 28 U.S.C. § 1391(a).

"[C]ourts in this circuit must be particularly carefully in examining challenges to venue 'to guard against the danger that a plaintiff might manufacture venue in the District of Columbia.'" *Holland v. A.T. Massey Coal,* 360 F.Supp.2d 72, 76 (D.D.C. 2004) (*citing Cameron v. Thornburgh,* 983 F.2d 253, 256 (D.C. Cir 1993). Thus, although courts generally afford substantial deference to a plaintiff's choice of forum, this deference is "mitigated" when the connection between the controversy, the plaintiff, and the chosen forum is attenuated. *Holland,* 360 F.Supp. 2d at 76 (citations omitted).

In evaluating the extent to which a transfer would be convenient to the parties and in the interests of justice, this Court must weigh private and public interest factors. *Holland,* 360 F.Supp. 2d at 76. The private interest factors include the plaintiff's choice of forum, the defendant's choice of forum, whether the claim arose elsewhere, the convenience of the parties, the convenience to the witnesses, and the ease of access to sources of proof. *Id.*

The private interests factors weigh heavily in favor of transferring this case to the Western District of Michigan. Here, the connection between the claim and this forum is attenuated, and accordingly, plaintiff's choice of forum in not entitled to any deference. BioPort's alleged malfeasances occurred in Michigan, and the plaintiff was injured in Georgia. Nearly every element of proof will be demonstrated by evidence located within the Western District of Michigan. The facilities in which AVA was tested and produced are located in Michigan. BioPort's records concerning the production of the vaccine and its testing, storing, bottling and shipping are located in Lansing, Michigan. The BioPort employees who are involved in the production, storage, testing and shipping of the vaccine are located in Michigan. This Court cannot compel the attendance at trial of any of the aforementioned witnesses, who will provide testimony about the primary issue in this case, *i.e.*, the alleged negligence and

14

defects in the design, manufacture and maintenance of AVA. As for the advantages of the District of Columbia, the most that can be said is that the plaintiff currently resides here, but he will offer no evidence relevant to the forgoing issues.

The public interest factors include the transferee district's familiarity with governing laws, the relative congestion of the calendars of the transferor and transferee courts, and the local interest in deciding controversies at home. *Holland,* 360 F.Supp. 2d at 76. These factors also weigh in favor of transferring this case to Michigan. AVA is manufactured in Michigan, and under applicable choice of law principles, the law of Michigan should apply to plaintiff's claim. The State of Michigan also has a strong interest in having its product liability law applied to the claims asserted in this lawsuit. The District of Columbia has no comparable interest.

It is worth noting that several similar lawsuits have been transferred to the Western District of Michigan. Four lawsuits almost identical to this one were originally filed in the United States District Court for the District of Columbia: *Rugo v. BioPort, Inc,.* No. 1:01-CV-02190; *Bonasse v. BioPort, Inc.*, No. 02-CV-00880; and *Lahiff v. BioPort Inc.*, No. 1:02-CV-01945 and *Allaire v. BioPort, Inc.* No. 1:02-cv-00248. As noted above, this Court dismissed the *Rugo* lawsuit after finding that it lacked personal jurisdiction over the defendants. The *Rugo* plaintiffs filed a motion for reconsideration asking the Court to exercise its discretion to transfer the case to the United States District Court for the Western District of Michigan rather than dismiss. The plaintiffs in the *Lahiff, Bonasse,* and *Allaire* lawsuits also filed motions to transfer. The *Allaire* plaintiffs' motion was granted. The parties thereafter agreed to stipulated dismissals without prejudice of the *Rugo, Lahiff* and *Bonasse* matters. As contemplated by those stipulations, the plaintiffs in those cases filed a new lawsuit in the United States District Court

15

for the District of Michigan captioned *Ammend et. al v. BioPort, Inc.* NO. 5:03-CV-31 (W.D. Mich).

Several other subsequent lawsuits involving alleged adverse reactions to AVA that were filed outside Michigan were also transferred and consolidated with *Ammend*. *See Fleming, et al. v. BioPort, Inc., et al.*, No. 3:03-CV-0581 (W.D. La.) (Judge Robert G. James granted BioPort's Motion to Transfer matter to Western District of Michigan); *Suk, et al. v. BioPort, Inc., et al.*, No. 03-CV-2610 (D. N.J.) (Judge Dennis M. Cavanaugh granted BioPort's Motion to Transfer matter to Western District of Michigan); *Reid, et al. v. BioPort, Inc.*, No. CV-05-007 (D. N.M.) (transferred to Western District of Michigan by consent order).[5]

Finally, it is worth noting that, even this Court finds that it lacks personal jurisdiction over BioPort, it has the discretion to transfer the case rather than dismiss it pursuant to 28 U.S.C. 1631 or 28. U.S.C. § 1404 (a). 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶111.14[2] n.6 (citing *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993)); *Coté v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). *See also, Hoffman v. Fairfax County Development and Housing Authority*, 276 F.Supp.2d 14, 17 n.1 (D.D.C. 2003).

---

[5]    The *Suk* lawsuit was later voluntarily dismissed by the plaintiff. On April 19, 2006, the United States District Court for the Western District of Michigan granted BioPort's motion for summary judgment in *Ammend* and the consolidated cases.

## IV.  CONCLUSION

For the foregoing reasons, this Court should dismiss this lawsuit for lack of personal jurisdiction and/or improper venue.  In the alternative, this Court should transfer this lawsuit to the United States District Court for the Western District of Michigan.

Respectfully submitted,

/s/ Gerald Zingone
Gerald Zingone
THELEN REID & PRIEST LLP
701 Eighth Street, N.W.
Washington, D.C.  20001
Telephone:  (202) 508-4332
Facsimile:  (202) 654-1841
E-mail:  gzingone@thelenreid.com

Dated: May 4, 2006