# EXHIBIT 2

Case 1:06-cv-00081-RCL    Document 8-4    Filed 05/05/2006    Page 1 of 10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NANCY RUGO, *et al.*,

    Plaintiffs,

v.

BIOPORT, INC., *et al.*,

    Defendants.

Civil Action No. 01-2190 (CKK)

FILED ✓

JAN - 7 2003

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION
(January 7, 2003)

The eighteen individual plaintiffs in the above-captioned action have filed a one hundred and thirty five-count Second Amended Complaint alleging that Defendants BioPort, Inc. ("BioPort"), Michigan Department of Public Health ("MDPH"), Michigan Biologic Products Institute ("MBPI"), and Dr. Robert C. Myers ("Myers") (collectively "Defendants") committed a number of tort, contract, statutory and constitutional violations related to the production and administration of the anthrax vaccine known as anthrax vaccine absorbed ("AVA"). Pending before the Court are Defendants MDPH and MDPI's (collectively "State Agencies") Motion to Dismiss or Transfer, and Defendants BioPort and Myers' Motion to Dismiss the Second Amended Complaint. After a careful review of the Motions to Dismiss, the Plaintiffs' Opposition ("Pls. Opp'n"), the Defendants' individual Replies, the submitted exhibits, and relevant law, the Court finds that it lacks personal jurisdiction over all the Defendants. As such, Plaintiffs' Complaint shall be dismissed without prejudice.

### I. BACKGROUND

Plaintiffs are citizens of Washington, Georgia, South Carolina, Idaho, Kansas, Virginia,

any resident of the District of Columbia. *Id.* ¶¶ 10-11. BioPort maintains no office, employee, telephone, mailing address, or registered agent for the service of process in the District of Columbia. *Id.* ¶ 14. BioPort owns no property in the District of Columbia, and none of its officers or directors are residents of the District of Columbia. *Id.* ¶¶ 15, 17. AVA was at all times relevant to this litigation produced in Michigan. Myers Decl. ¶ 11 ("All production and storage of AVA pursuant to the contracts with the United States government occurred in Lansing, Michigan."); Johnson Aff. ¶ 10 ("All AVA produced by MDPH and MBPI occurred at the state facilities located in Lansing Michigan. All storage, testing, bottling and distribution of the AVA vaccine done by MDPH and MBPI occurred at the state of Michigan facilities located in Lansing, Michigan."); Ruster Decl. ¶ 9 ("BioPort manufactures AVA at its facilities in Lansing, Michigan.").

In 1991, the U.S. Department of Defense ("DOD") and MDPH entered into a contract for the purchase of AVA vaccine (hereinafter referred to as "1991 Contract"). Compl. ¶ 47; BioPort Motion to Dismiss ("BioPort Mot.") at 12 ¶ 13. Plaintiffs allege that they received vaccine produced pursuant to the 1991 Contract. Pls. Opp'n at 7 ¶ 20. In 1995, the Governor of Michigan issued an executive order creating MBPI as part of an effort to privatize MDPH. Compl. ¶ 53. In 1997, MBPI entered into a contract with the U.S. Army for the sale of AVA. Compl. ¶ 60. In December 1997, then-Secretary of Defense William Cohen announced the Anthrax Vaccination Program for all members of the military. Compl. ¶ 63. The inoculation program was non-voluntary. Compl. ¶ 69. In September 1998, BioPort purchased assets of MBPI from the State of Michigan, including its AVA manufacturing facility. BioPort Mot." at 8 ¶ 3; Compl. ¶¶ 72-73.

Pennsylvania, California, New York, Ohio, Maryland and Oregon. Pls. Opp'n at 3 ¶ 1; Plaintiffs' Second Amended Complaint ("Compl.") ¶¶ 1-18. Sixteen of the Plaintiffs were "members of the U.S. Army, Airforce, Navy and the National Guard" when they received injections of AVA. Pls. Opp'n at 4 ¶ 2. Their inoculations were received between 1998 and 2000. Id. One plaintiff was a contractor for the federal government, and another is the sister of deceased Spc. Sandra Larson of the U.S. Army. Id. Plaintiffs allege that they, or the persons they represent, were healthy prior to receiving the AVA injections. Id. ¶ 3. They allege that AVA was the source of a variety of serious ailments and, in one case, death. Id. ¶ 4.

Defendants are all citizens of the State of Michigan. Id. ¶ 5. Myers is currently Executive Vice President of BioPort. Myers' Motion ("Myers' Mot."), Myers Declaration ("Myers Decl.") ¶ 1. From 1991 until 1996, Myers was the Chief of the Biologics Division of MDPH, and from 1996 until its sale to BioPort was Director of MBPI. Myers Decl. ¶¶ 2-3. Myers does not have a residence, own any real or personal property, or maintain a business operation in the District of Columbia. Myers Decl. ¶¶ 6-8. Neither Defendants MDPH or MBPI have offices, employees or agents in the District of Columbia. State Agencies' Motion ("State Agencies' Mot."), Affidavit of David R. Johnson ("Johnson Aff.") ¶ 9. Neither state agency conducts any business, or is licensed, incorporated, or authorized to do business in the District of Columbia. Id. MDPH and MBPI no longer exist as entities of the State of Michigan. Id. ¶ 8. Defendant BioPort is incorporated in the State of Michigan and has its principal place of business in Lansing, Michigan. BioPort's Motion ("BioPort Mot."), Declaration of Catherine Ruster ("Ruster Decl.") ¶ 6. BioPort does not market or sell AVA to any non-U.S. Government customer in the District of Columbia and does not deliver any product to or provide services to

2

## II. DISCUSSION

Defendants' Motions to Dismiss include charges that this Court lacks personal jurisdiction over them, brought pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiffs have the burden of establishing personal jurisdiction by "making a *prima facie* showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). Requiring more than "bare allegation[s]," this Circuit has held that "a plaintiff 'must allege specific acts connecting [the] defendant with the forum.'" *First Chicago*, 836 F.2d at 1378 (quoting *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n.5 (9th Cir. 1980)). As this Circuit has stated:

> Due process requires that, for a court to assert personal jurisdiction over a defendant not physically present within the forum, the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting* Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). . . . [T]he defendant's contacts with the forum state must be such that it "should reasonably anticipate being haled into court" there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

*Health Communications, Inc. v. Mariner Corp.*, 860 F.2d 460, 462 (D.C. Cir. 1988).

Where, as in the case at bar, none of the Defendants reside or maintain their principal place of business in the District of Columbia, the District's long-arm statute provides the sole basis upon which to hale a defendant into the courts of this jurisdiction. *See Reuber v. United States*, 750 F.2d 1039, 1049 (D.C. Cir. 1984); *Deutsch v. United States Dep't of Justice*, 881 F. Supp. 49, 51 (D.D.C. 1995), *aff'd*, 93 F.3d 986 (D.C. Cir. 1996). To determine whether or not it has jurisdiction over the parties in this case, this Court must first determine if jurisdiction is permitted by the District of Columbia's long-arm statute and then examine "whether

4

[jurisdiction] accords with the demands of due process." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

Plaintiffs claim that this Court has personal jurisdiction over Defendants based on the provision of the District of Columbia's long-arm statute which provides that:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's--
> (1) transacting any business in the District of Columbia;

D.C. Code § 13-423(a)(1) (2002). However, when a party seeks to establish jurisdiction over a defendant based on this provision, "only a claim for relief arising from acts enumerated in this section may be asserted against [the defendant]." *Id.* § 13-423(b). The Court of Appeals for the District of Columbia, whose interpretation of the long-arm statute is authoritative, has held that the scope of Section 13–423(a)(1) is as broad as the contours of the Due Process Clause of the Fourteenth Amendment. *See Mouzavires v. Baxter*, 434 A.2d 988, 993 (D.C. 1981), *cert. denied*, 455 U.S. 1006 (1982); *Cohane v. Arpeja-California, Inc.*, 385 A.2d 153, 158 (D.C.), *cert. denied*, 439 U.S. 980 (1978); *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987). In analyzing the constitutional limits of due process, the Supreme Court has articulated two fundamental predicates that must exist in each case: that [1] "the defendant has 'purposefully directed' his activities at residents of the forum, and [2] the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (internal quotations and citations omitted).

This Court may find that Defendants transacted business in the District of Columbia "only if the business is of a 'substantial character.'" *World Wide Minerals, Ltd., v. Republic of Kazakhstahn*, 116 F. Supp. 2d 98, (D.D.C. 2000) (citing *Armco Steel Co., L.P. v. CSX Corp.*, 790

5

F. Supp. 311, 320 (D.D.C. 1991). Plaintiffs maintain that they have alleged sufficient facts to show Defendants have transacted business in the District of Columbia. In this effort, Plaintiffs allege the following:

- Defendants contracted with DOD to sell AVA and DOD is located in District of Columbia Pl. Opp'n at 18.

- The decisions to enter into the contracts were made in Washington, D.C., as both Secretaries of Defense and the Army have their offices in the district. *Id.*

- The "1991 amendment to the 1998 contract and the 1991 contract provide that summary subcontractor reports are due to the Office of the Secretary of the Army and the Office of the Deputy Secretary of Defense located in the District of Columbia." *Id.*

- The "decision to include an indemnification clause in the 1998 contract was made by the Secretary of the Army in the District of Columbia." *Id.* at 18-19.

- The "Novation Agreement transferring all prior contracts to BioPort is an agreement between MBPI and the United States of America." *Id.* at 19.

- The United States Treasury is responsible under the agreements for the purchase of the AVA vaccine as well as any damages that arise out of those purchases, and the United States Treasury is located in the District of Columbia. *Id.*

The Court does not find these contacts sufficient to establish jurisdiction over Defendants under the District of Columbia's long-arm statute. First, the contracts that Plaintiffs use in their effort to establish jurisdiction were all signed outside of the District of Columbia with federal entities located outside of the District of Columbia. Pl. Opp'n at 20 ("The fact that the contracts

6

were specifically with a branch of the federal government located in Virginia or Maryland is immaterial."); Myers Decl. ¶ 10.[1] The Court finds Plaintiffs' unsupported statement that "any contracts with [the federal government] or any branch of the federal government . . . constitute transacting business within the District of Columbia" contrary to established law. *See Environmental Research, Ltd. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808 ("To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum."); *Freiman v. Lazur*, 925 F. Supp. 14, (D.D.C. 1996) (finding no personal jurisdiction over defendants under Section 13-423(a)(1) in part because "first . . . all of the contracts at issue here . . . were executed and performed outside of the District of Columbia; second . . . these government contractors do not have offices in the District; third, . . . defendant [Department of Energy's representative's] office . . . is in Germantown, Maryland; and fourth, all of the parties reside and work outside of the District of Columbia."); *Weisblatt v. United Aircraft Corp.*, 134 A.2d 713, 715 (1957) (finding corporation was not "doing business" in the District of Columbia, even though "[a]pproximately 85 percent of its current business is with the United

---

[1] "I am personally familiar with, and was in large part responsible for, the contacts between the United States government and MDPH and then MBPI concerning purchases of AVA in general . . . . I am also personally familiar with the contacts between the United States government and BioPort concerning the purchases of AVA in general . . . . None of the contacts with the [DOD] occurred in the District of Columbia: the Food and Drug Administration is located in Rockville, Maryland; the U.S. Army Medical Research Acquisition Activity, which has served as the government's contracting agent with MDPH, MBPI and BioPort, is located in Frederick, Maryland; and the Joint Program Office for Biological Defense, the executive agent for the combined armed services programs for biological defense, is located in Falls Church, Virginia." Myers Decl. ¶ 10.

7

States Government for products delivered and used outside the District.").

Second, even if this Court were to find that these contacts constituted "transacting . . . business," D.C. Code § 13-423(a)(1), with the District of Columbia, Plaintiffs have not shown that their "claim for relief aris[es]" from these alleged contacts. *Id.* § 13-423(b). Plaintiffs have not brought a breach of contract suit, nor are they parties to the contracts they claim provide the basis for jurisdiction over Defendants. The contracts between Defendants and federal government agencies are not the alleged source of Plaintiffs' injury; Plaintiffs maintain their harm was the result of wrongdoing by Defendants in the production of the vaccine, which was performed in Michigan. To agree with Plaintiffs, this Court would in essence declare that anytime anyone contracts with any federal government entity, anywhere in the United States, where the governmental decision-maker has an office in the District of Columbia, they would be subject to jurisdiction in the District of Columbia for any harm having any connection to that contract. Such a holding would clearly violate the "traditional notions of fair play and substantial justice" implicit in the constitutional requirement of due process. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940); *see also Burger King Corp.*, 471 U.S. at 472–73. The Court therefore finds that Plaintiffs have failed to meet their burden of establishing this Court's jurisdiction over Defendants.

### III. CONCLUSION

For the foregoing reasons, this Court finds that it lacks personal jurisdiction over all the Defendants in this case. Plaintiffs have not alleged facts sufficient to establish jurisdiction under the District of Columbia's long-arm statute. As such, this Court has no alternative but to dismiss Plaintiffs' Complaint for lack of jurisdiction. The Court shall dismiss the Complaint without

prejudice. An order accompanies this memorandum opinion.

January __7__, 2003

                                                       _____
                                                      COLLEEN KOLLAR-KOTELLY
                                                      United States District Judge