## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GARY SAVAGE,                    :
                               :
        Plaintiff,             :
                               :        Civil No. 1:06CV00081-RJL
v.                             :
                               :        Judge Royce J. Lamberth
BIOPORT, INC.,                 :
                               :
        Defendant.             :


### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
### IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS,
### OR, IN THE ALTERNATIVE, TO TRANSFER

Plaintiff Gary Savage, through counsel, respectively submits this memorandum of points and authorities in opposition to the Motion to Dismiss, or, in the alternative, to Transfer filed by Defendant BioPort, Inc. ("BioPort"). BioPort's motion should be denied because it has exhibited a pattern of conduct in pursuing its commercial activities in the District of Columbia that is extensive with numerous discrete actions, because it has availed itself of the privileges of and protections under District of Columbia law and because it is more convenient for the parties to litigate this case here in the District of Columbia than in any other jurisdiction.

## I.    INTRODUCTION

Plaintiff Savage was a sergeant in the U.S. Army when, while following orders in November and December of 2002, he was inoculated with BioPort's Anthrax Vaccination Absorbed ("AVA"). Complaint at ¶¶ 45, 66. Sgt. Savage suffered an adverse reaction to the AVA in late December 2002, and since that date has been debilitated and almost completely disabled. *Id.* at ¶¶ 67-69.

## II.    STATEMENT OF FACTS

Sgt. Savage is a long-term resident of the District of Columbia.  He resides at a Veteran's Medical Facility in the District of Columbia for treatment of injuries arising out of this matter.  Complaint at ¶ 1.  If he were not a patient in this facility, he would remain a resident of the District of Columbia, residing with his family at 221 Rock Creek Church Road NW, Washington, D.C.  *Id.*

BioPort is a Michigan corporation that contends that this Court has no jurisdiction in this case.  However, BioPort admits to having significant contacts with the District of Columbia:

(1)    BioPort has sold its AVA to the U.S. Department of Defense ('DoD') and the U.S. Department of Health and Human Services ('HHS').  BioPort's Brief in Support of its Motion ('BioPort Brief') at p. 2 ¶ 6.

(2)    BioPort admits that it 'has made shipments of AVA to DoD facilities in the District of Columbia."  *Id.* at ¶ 7.

(3)    BioPort avers that HHS 'prefers to keep the location of its AVA undisclosed," *id.* at p. 3 ¶ 8, yet BioPort does not deny that HHS may store AVA in the District of Columbia.

(4)    BioPort concedes that it 'has taken  steps to begin marketing AVA to state and local governments" and that these 'efforts included one meeting in the District of Columbia with the District's Police, Fire, and Emergency Medical Services chiefs."  *Id.* at ¶ 10.

(5)     BioPort further concedes that it has run "issue-oriented 'advertisements' in *Roll Call*, *The Hill*, and *The Washington Times* concerning AVA …" but fails to mention the number and extent of such advertisements. *Id*. at ¶ 11.

(6)     BioPort also admits that it "has provided funding to th e Partnership for Anthrax Vaccine Education, which is based at George Washington University Medical Center's School of Public Health and Public Health Services" which is located in the District of Columbia. *Id*. at ¶ 12.  BioPort fails to provide any detail concerning the extent and degree of its contacts with the School of Public Health and Public Health Services  ('SPHPHS').

(7)     In carefully crafting its memorandum, BioPort concedes that it "has, from time to time, engaged legal counsel based in the District of Columbia including the counsel representing BioPort in this lawsuit." *Id*. at p. 4 ¶ 13.  BioPort fails to provide any details regarding the purposes and reasons that it has engaged legal counsel in the District that were not in connection with this litigation, nor does BioPort state the extent of its use of legal counsel located in the District.  BioPort could have easily provided more detail as to the extent of its involvement with legal counsel located in the District, surely it has billing records from counsel, yet its silence on this issue is conspicuous. Before a fair analysis of this motion can be undertaken, BioPort should provide a full accounting of its involvement with legal counsel based in the District of Columbia. Unless and until BioPort provides such an accounting, Sgt. Savage requests that this Court construe against BioPort the inferences and implications arising from BioPort's carefully crafted statement as to its involvement with legal counsel located in the District and BioPort's conspicuous silence as to the extent of such involvement.

(8)    BioPort states that none of its "contract negotiations" with the DoD

occurred in the District of Columbia. *Id*. at p. 4 ¶ 14.  However, BioPort does not state

that it had no contact or communications with the DoD offices located in the District of

Columbia; it merely confines its statement to "contract negotiations."  Again, BioPort

should be more forthcoming, and provide a comprehensive statement as to the totality of

its contacts and communications with DoD personnel that have transpired in the District

of Columbia.  Until and unless BioPort does so, its artfully drafted statement regarding

"contract negotiations" should be construed against it.

(9)    Finally, BioPort admits that "the HHS contracting officer … is now based

in the District of Columbia.  BioPort is also in the process of negotiating a contract

modification; HHS is represented by some District of Columbia based personnel in these

negotiations."  *Id*. at p. 4 ¶ 15.  Once more, BioPort should be more forthcoming, and

provide a comprehensive statement as to the totality of its contacts and communications

with HHS personnel that have transpired in the District of Columbia.  Moreover, BioPort

should provide much more detail as to its negotiations with "District of Columbia based

personnel" since on this ground alone BioPort could be found to have had significant

contacts with the District of Columbia.  BioPort should be required to provide the number

and dates of contacts with "District of Columbia based personnel" and the full extent of

those contacts.  Until and unless BioPort does so, its carefully drafted statement regarding

contract negotiations with "District of Columbia based personnel" should be construed

against it.

In sum, BioPort has admitted to having the following contacts with the District of

Columbia:  making shipments of its AVA to facilities in the District of Columbia,

4

marketing its AVA to officials in the District of Columbia government, running advertisements in three District of Columbia newspapers, providing funding to a medical facility located in the District of Columbia, engaging legal counsel located in the District of Columbia for purposes other than this litigation, and carrying on negotiations with "District of Columbia based personnel." BioPort has not been fully forthcoming on the extent and degree of its marketing and advertising campaigns in the District of Columbia, the extent and degree of the funding it has provided to a medical facility located in the District of Columbia nor of its contacts with the facility, the extent and degree of its use of legal counsel located in the District of Columbia, the extent and degree of its contacts with DoD personnel located in the District of Columbia, or the extent and degree of its contacts with HHS personnel located in the District of Columbia.

## III.    ARGUMENT

### A.    This Court Has Personal Jurisdiction over BioPort.

BioPort argues that this Court lacks personnel jurisdiction over BioPort under the "minimum contacts" test. BioPort Brief at 4-5. As shown above, BioPort has had a multitude of contacts with the District of Columbia, and this Court clearly has personal jurisdiction over BioPort.

Clearly, there are sufficient facts here to support a finding that this Court has personal jurisdiction over BioPort. BioPort concedes that it has made shipments of its AVA to facilities in the District of Columbia. BioPort admits that it has marketed its AVA to officials in the District of Columbia government. BioPort acknowledges that it has run advertisements in three District of Columbia newspapers. BioPort further concedes that it has provided funding to a medical facility located in the District of

Columbia, and logic requires us to conclude that BioPort must have had numerous contacts and communications with the D.C. medical facility before and after it provided funding. BioPort also admits that it has engaged legal counsel located in the District of Columbia for purposes other than this litigation. BioPort also acknowledges it has carried on negotiations with "District of Columbia based personnel."

Therefore, it is certain that BioPort "purposefully established minimum contacts" with the District of Columbia, and BioPort should submit to this Court's jurisdiction. *Asahi v. Metal Ind. Co. v. Superior Court*, 480 U.S. 102, 108-09, 107 S. Ct. 1026, 1030-31, 94 L. Ed. 2d 92 (1987). Moreover, in determining whether a factual basis for jurisdiction exists, any factual discrepancies must be resolved in favor of the plaintiff. *Crane v. New York Zoological Society*, 894 F.2d 454, 456 (D.C. Cir. 1990).

If this issue is in doubt, at a minimum this Court should allow Sgt. Savage to pursue additional discovery to prove conclusively that the District of Columbia has personal jurisdiction over BioPort, as was done in *El-Fadl v. Central Bank of Jordan*, 316 U.S. App. D.C. 86, 75 F.3d 668 (1996). Additional discovery should be allowed before a determination of BioPort's motion to dismiss, to determine whether this Court has jurisdiction over BioPort under *El-Fadl*. 316 U.S. App. D.C. at 94, 75 F.3d 676 ("Even though El-Fadl's present jurisdictional allegations are insufficient, he has sufficiently demonstrated that it is possible that he could supplement them through discovery.").

*El-Fadl* reversed the trial court's dismissal of an action which was based on a lack of personal jurisdiction under the "doing business" ground of D.C. Code § 13-334(a), among other grounds, and remanded with directions to allow further discovery as to

whether the contacts between the defendant and the District of Columbia were sufficient to sustain general jurisdiction. *Id.*

If this Court entertains any doubt that the level of BioPort's involvement in the District has not been demonstrated conclusively enough to support a determination that BioPort is doing business here, it nonetheless should be recognized that Sgt. Savage has cited specific instances of BioPort's involvement in the District, instances sufficient to permit further discovery. Even though BioPort has denied it is subject to this Court's jurisdiction, a fair reading of the facts shows that it is not only "not implausible" that further discovery would show even more extensive connections between BioPort and the District but, given BioPort's admissions in its motion and declaration, it is highly likely that Sgt. Savage can prove jurisdiction beyond any doubt, should this Court permit him to conduct limited discovery directed at BioPort's contacts with the District of Columbia. *El-Fadl*, 316 U.S. App. D.C. at 94, 75 F.3d 676.

Allowing a plaintiff to conduct discovery to prove jurisdiction has repeatedly been authorized by the D.C. Circuit Court of Appeals. *GTE New Media Services, Inc. v. BellSouth Corp.,* 339 U.S. App. D.C. 332, 199 F.3d 1343 (D.C. Cir. 2000), discussed by BioPort in its motion (at pp. 5, 10), presents an excellent review of jurisdictional discovery. In *GTE*, the Court noted that "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified... Jurisdictional discovery will help sort out these matters." 339 U.S. App. D.C. at 341-42, 199 F.3d at 1351-52. Finding that the record before it was "plainly inadequate" on the jurisdictional issue, the *GTE* Court held that its plaintiff was "entitled to pursue precisely

focused discovery aimed at addressing matters relating to personal jurisdiction" and remanded the case for further proceedings.  339 U.S. App. D.C. at 342, 199 F.3d at 1352.

The *GTE* Court noted that it had previously vacated a judgment entered by the trial court in *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987), because, in part, 'Crane's case was dismissed with no opportunity for discovery on the issue of personal jurisdiction." 339 U.S. App. D.C. at 342, 199 F.3d at 1352.  On this issue, Sgt. Savage merely requests the opportunity to do limited discovery on the issue of personal jurisdiction, and, at the very least, should be allowed to do so.

In this case, as discussed above, there are several key facts tending to show that this Court has jurisdiction over BioPort, facts that Sgt. Savage can develop further through 'precisely focused" jurisdictional discovery.  For example, Sgt. Savage can determine the number, extent, and degree of:

(1)  BioPort's shipments of AVA to facilities in the District of Columbia;
(2)  BioPort's marketing efforts regarding selling AVA to officials in the District of Columbia government;
(3)  BioPort's advertising campaign in the District of Columbia;
(4)  BioPort's funding of and contacts with a medical facility located in the District of Columbia;
(5)  BioPort's engagement of legal counsel located in the District of Columbia for purposes other than this litigation; and
(6)  BioPort's negotiations with 'District of Columbia based personnel."

For example, BioPort admits to 'one meeting" with D.C. government personnel, BioPort Brief at p. 3 ¶ 10, but how many telephone calls, emails, letters, and other contacts did BioPort make to arrange its 'one meeting" with D.C. government personnel?  Permitting Sgt. Savage to conduct jurisdictional discovery on the above matters would be a fair and

just resolution of this issue. Such discovery will conclusively resolve this issue, and should be permitted.

1.     **This Court Has General Jurisdiction over BioPort.**

BioPort was served with process by registered mail pursuant to Fed. R. Civ. P. 4. BioPort obviously received service of process by virtue of its presence here. However, should this Court have any question regarding such service, Sgt. Savage is endeavoring to resolve this issue as well. BioPort's case *Gorman v. Ameritrade Holding Corp.*, 352 U.S. App. 229, 239, 293 F.3d 506, 516 (D.C. Cir. 2002), provides a method of service sanctioned by the D.C. Circuit Court of Appeals:

> Finally, Gorman urges that it would be unfair if a foreign corporation, lawfully subject to the jurisdiction of the District of Columbia because it does business here, could evade that jurisdiction by keeping its agents out of the District and hence beyond the range of effective service of process. If such a loophole does exist, the legislature can, of course, remove it by amending § 13-334 to provide an alternative method of service. But we are not at all certain that legislative action is required. Section 29-101.99(e)(2) of the D.C. Code, cited by neither party, provides that '[w]henever any foreign corporation does not have an agent for service of process ... the Mayor shall be the agent for service of process for the corporation."

352 U.S. App. at 239, 293 F.3d at 516.

> The section further provides that '[i]n the event of service to the Mayor, the Mayor shall immediately cause one of the copies to be forwarded by certified or registered mail, addressed to the foreign corporation at its principal office or at its last known address." D.C. Code § 29-101.99(e)(2); see *also id*. § 29-101.108.

*Id*. at n. 11.

While he believes service was proper and effective in this action, Sgt. Savage is endeavoring to comply with *Gorman* and with § 29-101.99(e)(2). Since BioPort does not have an agent for service of process in D.C., Sgt. Savage will serve Mayor Williams, as

the agent for service of process for the BioPort.  In his service of process upon Mayor

Williams, Sgt. Savage will notify the Mayor that D.C. Code § 29-101.99(e)(2) directs the

Mayor to 'immediately' cause one of the copies to be forwarded by certified or

registered mail, addressed to BioPort at its principal office or at its last known address.

Sgt. Savage will provide BioPort's address to the Mayor.

   **2.     This Court Has Specific Jurisdiction over BioPort.**

   *Shoppers Food Warehouse v. Moreno*, 726 A.2d 320 (D.C. App. 2000), provides

a comprehensive analysis of specific jurisdiction over a foreign corporation:

> (1) Section 13-423(a)(1) is coextensive in reach with the personal
> jurisdiction allowed by the due process clause of the United States
> Constitution;
> (2) There are no 'mechanical tests' or 'talismanic formulas' for the
> determination of personal jurisdiction under § 13-423(a)(1) and (b), and
> the facts of each case must be weighed against notions of fairness,
> reasonableness and substantial justice;
> (3) Under the due process clause, the minimum contacts principle requires
> [a court] to examine the quality and nature of the nonresident defendant's
> contacts with the District and whether those contacts are voluntary and
> deliberate or only random, fortuitous, tenuous and accidental;
> (4) Where a nonresident defendant has purposefully availed itself of the
> benefits and protections of the District in engaging in a business activity in
> the forum jurisdiction, it is fair and reasonable to expect it to anticipate
> being sued in that jurisdiction;
> (5) In examining the nonresident defendant's contacts with the District,
> the focus is placed on the relationship among the defendant, the forum and
> the litigation;
> (6) It is reasonable and fair for the District to exercise specific jurisdiction
> where a nonresident defendant has purposefully directed its activities at
> District residents, and claims against it by a District resident 'arise out of
> *or* relate to," (emphasis added by *Shoppers Food Warehouse* Court), or
> have a 'substantial connection' with, the business transacted in the
> District;  and
> (7) ***The District has a manifest interest in providing a convenient forum
> in which its residents may seek relief for injuries inflicted by the
> nonresident defendant, especially where litigation within the District
> would not impose an undue burden on the nonresident defendant***
> (emphasis added).

726 A.2d at 329 (case citations omitted).

Applying the *Shoppers Food Warehouse* analysis to this case, one finds:

(a)     The quality and nature of the BioPort's contacts with the District are clearly voluntary and deliberate, and not random, fortuitous, tenuous or accidental. BioPort has contacted DoD and HHS for the sole purpose of selling its commercial product AVA, made shipments of its AVA to facilities in the District of Columbia, marketed its AVA to officials in the District of Columbia government, run advertisements in three District of Columbia newspapers, provided funding to and having contacts with a medical facility located in the District of Columbia, engaged legal counsel located in the District of Columbia for purposes other than this litigation, and carried on negotiations with "District of Columbia based personnel."

(b)     BioPort has purposefully availed itself of the benefits and protections of the District in engaging in business activities in the District, business activities it admits to conducting with the DoD, HHS, a D.C. medical facility, and the District government, and advertising in District newspapers.  Therefore, it is fair and reasonable for BioPort to expect and anticipate being sued in the District.

(c)     In examining BioPort's contacts with the District and placing the focus on the relationship among the BioPort, this Court, and this litigation, it is clear that BioPort's actions in marketing its AVA to the DoD and HHS, as well as other D.C. institutions, and its research at D.C.-based SPHPHS, are part and parcel of the claim at the heart of this litigation, i.e., that BioPort's defective AVA caused Sgt. Savage's debilitating and disabling injuries.

(d)     It is reasonable and fair for the District to exercise specific jurisdiction where BioPort has purposefully directed its activities at District institutions and Sgt. Savage, a District resident, has brought a claim against BioPort "arise[s] out of or relate to," or has a "substantial connection" with the business transacted in the District because, as noted above, Sgt. Savage's claim that BioPort's defective AVA caused his debilitating and disabling injuries indisputably "relates to" and has a "substantial connection" with BioPort's business transacted in the District.

(e)     Finally, the District has a manifest interest in providing a convenient forum in which its residents—including Sgt. Savage—may seek relief for injuries inflicted by nonresident defendants—including BioPort—especially where, as here, litigation within the District would not impose an undue burden on the nonresident defendant BioPort.

In this litigation, Sgt. Savage, a long-term resident of the District of Columbia, is seeking relief for injuries inflicted by BioPort.  Sgt. Savage is almost totally disabled from his injuries caused by BioPort.  Sgt. Savage is confined to a VA medical facility, and dependent on its care and the care of his parents and family, most of whom are residents of the District of Columbia.

On the other hand, BioPort is a corporation based in Michigan.  BioPort has capable local counsel and can easily defend this litigation here in the District of Columbia.  BioPort's witnesses can travel to the District for trial without any difficulty. BioPort can copy the documents it needs for its defense and ship the documents to the District without any difficulty.

This Court and the District of Columbia have a "manifest interest" in providing a convenient forum for Sgt. Savage in this litigation against BioPort. In balancing the difficulties the parties here might face in litigating this case in this Court, it is beyond dispute that BioPort would have few difficulties in a trial here in the District of Columbia, while Sgt. Savage would encounter almost insurmountable difficulties in trying to litigate this case in Michigan. Sgt. Savage should be allowed to pursue his claim against BioPort in this Court.[1]

> **a.    Transacting business.**

BioPort places its sole reliance here on the "government contacts" doctrine. BioPort Brief at 8-9. However, even though BioPort skillfully recounts its "government contacts" defense in its argument here, it fails to mention its other contacts with the District of Columbia, contacts that do not involve "contacting" the Federal government. BioPort neglects to mention its "non-governmental contacts" with the District, including:

> (1)    BioPort's marketing efforts regarding selling AVA to officials in the District of Columbia government;
> (2)    BioPort's funding of and contacts with a medical facility located in the District of Columbia;
> (3)    BioPort's engagement legal counsel located in the District of Columbia for purposes other than this litigation; and
> (4)    BioPort's negotiations with "District of Columbia based personnel."

Furthermore, BioPort's argument that its "issue oriented advertisements in *Roll Call*, *The Hill*, and *The Washington Times* cannot serve as a predicate for asserting personal jurisdiction over BioPort in the District of Columbia" does not pass the "straight face" test. It is common knowledge and a universally known fact of which this Court can

---

[1] Other courts have seen fit to protect residents of their jurisdiction in products liability actions against non-resident corporations where defective products were involved. See, e.g., *Rowe v. Hoffman-LaRouche, Inc.*, 383 N.J. Super. 442, 892 A.2d 694 (2006)(New Jersey law setting forth rebuttable presumption that a

take judicial notice that many of the readers of *Roll Call* and *The Hill* are residents of the District of Columbia, be they Capitol Hill staffers, lobbyists or other persons employed in politically-related jobs, or simply persons interested in politics. Moreover, *The Washington Times* is a paper of general circulation, with a circulation of over 100,000, read by tens of thousands of District residents for its coverage of international, national and local news, sports, business, and other sundry matters.[2]

Therefore, BioPort admits to at least five separate continuous patterns of conduct that do not involve "government contacts:" marketing efforts regarding selling AVA to D.C. government officials, funding of and contacts with a D.C. medical facility, engagement legal counsel located in the District of Columbia for purposes other than this litigation, negotiations with "District of Columbia based personnel," and an advertising campaign that reaches tens of thousands of District residents. Such conduct, standing alone and without further discovery, is sufficient to invoke this Court's jurisdiction over BioPort.

Second, BioPort's contacts with the Federal government bring it within this Court's jurisdiction: BioPort's contacts with the Federal government are not in the nature of contacts protected by the "government contacts" doctrine; BioPort is not lobbying officials on a political issue, is not contacting its representatives or senators for constituent services, is not interacting with patent or other regulatory agencies. No, BioPort is simply engaged in commerce, a noble calling, but nevertheless conduct that brings BioPort squarely within this Court's jurisdiction.

---

warning is adequate if approved by Food and Drug Administration, rather than Michigan statute, under which FDA-approved warning is adequate, i.e., 'not defective," applied to action) .

[2] On May 18, 2005, *The Washington Times* reported an average daily circulation of 103,017 for the six-month period ending March 31, 2005:  http://www.washtimes.com/business/20050518-120247-7729r.htm.

14

It is black letter law that contacts with the Federal government that are more akin to business transactions or to other non-traditional governmental contacts than to contacts with a Federal agency for a conventional governmental purpose are not protected by the "government contacts" doctrine.  *See, e.g., Johns v. Rozet,* 770 F. Supp. 11, 19 (D.D.C. 1991) (per J. Richey) (negotiations and transactions with a Federal agency regarding private rehabilitation of public housing property is "not a uniquely governmental function" and did not fall under the "government contacts" exception;  *United States v. Wilfred American Education Corp.,* Civ. Action No. 86-0333, 1987 WL 10501, at *5 (D.D.C. Apr. 23, 1987) (no "government contacts" exception applied where a private entity entered into participation agreements with a Federal agency and complied with various reporting requirements in order to remain a prioritized institutional participant of a government student aid program).

The "government contacts" doctrine and its exception to the D.C. long-arm statute is based on the First Amendment with the intent of facilitating access to the Federal government.  *Johns v. Rozet,* 770 F. Supp. at 19.  "The exception is available only to parties whose sole contact with the District of Columbia arise out of dealing with a federal instrumentality on a subject unique to the government."  *Id.*  Any additional contacts with D.C., "including retain[ing] counsel for more than merely facilitating governmental action," can defeat an attempt to use the doctrine.  *Id.*

BioPort's contacts with Federal agencies involved commerce, no more, no less. Commerce is an important activity, but is not protected by the "government contacts" doctrine.  Therefore, even disregarding BioPort's contacts with D.C. institutions and

residents, this Court has jurisdiction solely because of BioPort's government contacts of a commercial nature.

### b.    Tortious Injury in District.

Sgt. Savage's injuries are of a continuing nature, as his debilitation caused by BioPort's AVA continues to ravage his body.  A District of Columbia resident's "slip and fall" in a Maryland grocery store has been held to allow personal jurisdiction over a foreign corporation.  *Shoppers Food Warehouse, supra,* 726 A.2d at 336.

BioPort does not dispute that Sgt. Savage's injuries were caused by its AVA, BioPort marketed its AVA through its numerous contacts with the District of Columbia, and therefore sufficient "nexus" exists to comport with Due Process.  As the *Shoppers* Court noted, *id*. at 332, such facts are sufficient to establish "nexus" under standards set by the U.S. Supreme Court:  "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [the forum court]."  *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223 n. 8, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957).

### 3.    This Court's Exercise of Jurisdiction over BioPort Satisfies Due Process.

BioPort argues that it does not have sufficient "minimum contacts" with the District of Columbia based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws," and relies upon *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985).[3]  "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction

---

[3] BioPort's "quotation" from *Burger King* is fraught with errors (BioPort Brief at 10-11); a correct quote is found above.

solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts…"    *Id*. (internal citations omitted).

Applying *Burger King*'s factors to this case, it is abundantly clear that BioPort has sufficient "minimum contacts" with the District of Columbia based on its acts by which BioPort purposefully availed itself of the privilege of conducting activities with the District of Columbia, thus invoking the benefits and protections of its laws. As discussed above, BioPort has engaged in substantial commercial activities in the District of Columbia. BioPort has marketed, sold, and delivered its AVA to Federal agencies in the District. BioPort has marketed its AVA to the D.C. government. BioPort has funded research and, presumably, had significant contacts with a D.C. medical institution. BioPort has run an advertising campaign in three D.C. newspapers. Therefore, it is clear that BioPort's "purposeful availment" of the protections of and privileges under D.C. law in its extensive commercial activities in the District has ensured that it was not haled into D.C. solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts. BioPort's contacts with the District were not random but were planned, were not fortuitous but deliberate, were not attenuated but strong, direct, and central to its business.

BioPort also contends that "other than dealings with the federal government, [its] contacts with the District of Columbia have been *de minimus*." BioPort Brief p. 11. However, BioPort's argument is defeated by its own admissions. As noted above, BioPort has admitted to having the following contacts with the District of Columbia: making shipments of its AVA to facilities in the District of Columbia, marketing its AVA to officials in the District of Columbia government, running advertisements in three the District of Columbia newspapers, providing funding and having contacts with a D.C.

medical facility, engaging legal counsel located in the District of Columbia for purposes

other than this litigation, and carrying on negotiations with "District of Columbia based

personnel."

Moreover, as discussed above, since BioPort's interactions with the Federal

government were purely commercial, BioPort cannot rely on the "government contacts"

doctrine.  Once all of BioPort's contacts with District institutions and personnel, both

Federal and local, are calculated, it is simply inane to argue that Due Process would be

offended by putting BioPort under the jurisdiction of this Court.  BioPort has deliberately

and repeatedly injected itself into the District of Columbia, and D.C. courts should be

permitted to hold BioPort accountable for injuring D.C. residents.

Furthermore, BioPort has failed to provide any information as to the extent and

degree of its marketing and advertising campaigns in the District of Columbia, the extent

and degree of the funding it has provided to a medical facility located in the District of

Columbia nor of its contacts with the facility, the extent and degree of its use of legal

counsel located in the District of Columbia, the extent and degree of its contacts with

DoD personnel located in the District of Columbia, or the extent and degree of its

contacts with HHS personnel located in the District of Columbia.  BioPort should be

required to provide a full accounting of its contacts with District of Columbia, including

its marketing and advertising campaigns, its involvement with District of Columbia

medical facilities, its use of District of Columbia legal counsel, and its communications

with District of Columbia based personnel, and the full extent of those contacts.  Until

and unless BioPort does so, its artfully drafted statements regarding contacts with the

District of Columbia should be construed against it, as should its conspicuous silence on those matters.

In its conclusion to its argument in this section, BioPort contends that *Rugo v. BioPort, Inc.*, Slip Op. January 7, 2003, Civ. Action No. 01-2190 (CKK) provides guidance for this Court in resolving this issue. *Rugo* provides no guidance whatsoever; unlike the present case, none of the *Rugo* plaintiffs was a resident of the District of Columbia. *Rugo* at 1-2.[4] In stark contrast to the *Rugo* plaintiffs, Sgt. Savage is a life-long resident of the District of Columbia, and his only absences from the District of Columbia were those times he was called to duty in the service of our government. Moreover, as shown above, the fact that the full extent of BioPort's contacts with the District of Columbia was not known at the time *Rugo* was decided—and even though BioPort has managed to keep secret much of the detail concerning its contacts to this day, we know more today than in 2003—makes *Rugo* irrelevant. For example, *Rugo* lacks knowledge of BioPort's contacts with the D.C. government, BioPort's funding of and contacts with SPHPHS, a D.C. medical institution, and BioPort's advertising in three major D.C. newspapers, among other factors. *See Rugo, passim*. *Rugo* also did not discuss the "commercial activity" exception to the government contacts doctrine. *Id*.

The sum and substance of this case is that BioPort has thrust itself into the District of Columbia on many, many occasions, for a variety of precise purposes but always for the overall purpose of making money, as many corporations do. BioPort has profited immensely from its contacts with the District of Columbia. Thus, fundamental fairness

---

[4] BioPort attached Judge Kollar-Kotelly's opinion in *Rugo* as Exhibit 2 to its motion, but shuffled the pages and so its page numbers do not match those of the opinion. Sgt. Savage will use the opinion's page numbers in his references to the opinion.

and equity demand that a D.C. court hear a lawsuit brought by a D.C. resident and Army

veteran for injuries suffered at the hands of BioPort during his service to our country.

     **B.**     **The District of Columbia Is a Proper Venue for this Action, and This Action Should Not Be Transferred to the Western District of Michigan.**

For the same reasons as stated immediately above, this action should be tried

before this Court.[5]  BioPort has operated in the District, had significant contacts with the

District, made money in the District, and set on a course of continual conduct injecting

itself into the District.  Sgt. Savage brought this action before this Court, and his choice

of forum should be honored in this case because BioPort has had more than sufficient

contacts with the District of Columbia.

     'For the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have

been brought." 28 U.S.C. §  1404(a).  To support a motion to transfer, the moving party

must demonstrate that the 'balance of convenience of the parties and witnesses and the

interest of justice are in [its] favor."  *Consol. Metal Products v. Am. Petroleum Inst.,* 569

F. Supp. 773, 774 (D.D.C. 1983).  The moving party 'bear[s] a heavy burden of

establishing that plaintiffs'  choice of forum is inappropriate."*Pain v. United Tech. Corp.,*

637 F.2d 775, 784 (D.C. Cir.1980).

     Courts engage in a case-by-case consideration of convenience and fairness when

assessing a motion to transfer venue.  *SEC v. Savoy Indus., Inc.,* 587 F.2d 1149, 1154

---

[5] BioPort also attempts to argue the relevance of decisions in other districts around the country (BioPort Brief p. 15), but attaches none of those decisions.  A search of the computerized databases (Westlaw and Lexis) and the websites for the courts referenced in BioPort's citations found none of the cases accessible. Therefore, Sgt. Savage moves to strike any reference to those opinions.  In any event, BioPort makes no argument whatsoever that its contacts with the other states were of the extent and degree of its contacts with the District of Columbia.

(D.C. Cir. 1978) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d

945 (1964)).  Courts balance a number of private and public interest factors, including (1)

plaintiff's forum choice;  (2) defendant's forum choice;  (3) whether the claim arose

elsewhere;  (4) convenience of the parties;  (5) convenience of the witnesses;  (6) ease of

access to the proof;  (7) transferee's competence;  (8) congestion of both courts; and (9)

local interest in deciding local controversies at home.  *Trout Unlimited v. United States

Dep't of Agric.,* 944 F. Supp. 13, 16 (D.D.C. 1996); see *also Greater Yellowstone

Coalition v. Bosworth,* 180 F. Supp. 2d 124, 127-28 (D.D.C. 2001).

Courts give considerable deference to the plaintiff's choice of forum.*Trout

Unlimited,* 944 F. Supp. at 17; see *also Thayer/Patricof Educ. Funding v. Pryor

Resources, Inc.,* 196 F. Supp. 2d 21, 31 (D.D.C. 2001).  That deference, however, is

lessened when plaintiff's forum choice 'lacks meaningful ties to the controversy and

[has] no particular interest in the parties or subject matter."  *Islamic Republic of Iran v.

Boeing Co.,* 477 F. Supp. 142, 144 (D.D.C. 1979); compare *Greater Yellowstone

Coalition,* 180 F. Supp. 2d at 128 (finding a nexus to Washington because senior federal

officials in the city participated in discussions to reissue the challenged permits, two of

the five plaintiffs had offices in the District of Columbia, and the case involved federal

statutes), *with Hawksbill Sea Turtle v. Fed. Emergency Management Agency,* 939 F.

Supp. 1, 3-4 (D.D.C. 1996) (finding an 'insubstantial factual nexus" with the plaintiff's

forum choice of Washington because the temporary emergency housing project, species

habitat, and alleged violations of environmental law occurred in the Virgin Islands).

This case has meaningful ties to the District, and has a nexus in Washington

because of BioPort's actions, because Sgt. Savage is a long-time resident of the District,

and because Sgt. Savage's injuries suffered at the hands of BioPort are directly related to BioPort's contacts with the District.  This Court is the most convenient forum for the witnesses and provides ease of access to the necessary proof, which will mostly entail documentary evidence with limited testimony.  This Court is not so congested that it should refuse to hear a case brought by a D.C. resident who is a disabled Army veteran.  Finally, there is "manifest" local interest in deciding this local controversy here in the District of Columbia.

### C.    This Case Should Not Be Transferred to the Western District of Michigan.

As discussed in depth above, Sgt. Savage is a long-term resident of the District of Columbia, seeking relief for injuries inflicted by BioPort.  Sgt. Savage is almost totally disabled from his injuries caused by BioPort, confined to a VA medical facility, and dependent on its care and the care of his parents, and family most of whom are residents of the District of Columbia.

BioPort is a corporation based in Michigan.  BioPort has capable local counsel and can efficiently defend this litigation here in the District of Columbia.  BioPort's witnesses can easily travel to the District for trial without any difficulty, and BioPort can copy the documents it needs for its defense and ship the documents to the District without any difficulty.

This Court and the District of Columbia have a "manifest interest" in providing a convenient forum for Sgt. Savage in this litigation against BioPort.  This Court is the most convenient forum for the parties.  This Court should keep this case here at home in the District of Columbia.

## IV.    CONCLUSION

For the aforementioned reasons, BioPort's Motion to Dismiss, or, in the alternative, to Transfer should be denied.

Respectfully submitted,

_____
John E. Carpenter #420756, Esq.
910 17th Street NW
Suite 800
Washington, D.C.  20006
(202) 887-5445

Attorney for Plaintiff Gary Savage

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing opposition to defendnat's motion to dismiss or in the alternative transfer was served electronically on this _____ day of _____ 2006 to:

Gerald Zingone, Esq.
Thelen Reid and Priest
701 8th Street NW
Washington, D.C.  20001
gzingone@thelenreid.com

_____
John E. Carpenter